POLLOCK v FIRE INSURANCE EXCHANGE

Docket No. 97827. Submitted February 9, 1988, at Detroit. Decided March 22, 1988.

Lynne Pollock's home was insured for fire damage under a policy issued by Fire Insurance Exchange. Her property was damaged by fire and she made a claim, which Fire Insurance Exchange denied. It also failed to appoint an appraiser as requested. Pollock brought an action against Fire Insurance Exchange in the Oakland Circuit Court. Defendant denied breaching the contract and asserted that plaintiff failed to properly document her claim. The local government demolished what was left of the building. The court, Frederick C. Ziem, J., granted summary disposition to plaintiff, holding that she was due replacement cost value even though she did not repair, replace or rebuild her house in accordance with the policy requirements because defendant's delay made compliance impossible. The court also awarded prejudgment interest. Defendant appealed.

The Court of Appeals *held:*

1. An insurer may not raise as a defense to an action by an insured the fact that the insured failed to perform a required act where the insurer hindered the insured from performing.

2. The award of prejudgment interest was proper.

Affirmed.

EQUITY — INSURANCE — NONPERFORMANCE.

An insurer may not raise as a defense to an action by an insured the fact that the insured failed to perform a required act where the insurer hindered the insured from performing.

*Hatchett, Dewalt, Hatchett & Hall* (by *Elbert L. Hatchett*), for plaintiff.

REFERENCES

Am Jur 2d, Insurance §§ 1498 *et seq.;* 1664, 1665, 1771

Insurer's liability for consequential or punitive damages for wrongful delay or refusal to make payments due under contracts. 47 ALR3d 314.

Insurer's liability as affected by refusal of public authorities to permit reconstruction or repair after fire. 90 ALR2d 790.

*Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, P.C.* (by *David R. Tuffley* and *John A. Lawson*), for defendant.

Before: J. H. GILLIS, P.J., and GRIBBS and SAW-YER, JJ.

PER CURIAM. Defendant appeals from an order of summary disposition, entered pursuant to MCR 2.116(I)(2), in favor of plaintiff on her claim against defendant under a fire insurance policy.

Plaintiff's home was damaged by fire on January 24, 1984, resulting in plaintiff's filing the instant claim of loss with defendant. Defendant denied the claim; plaintiff responded by filing a proof of loss and demand for appraisal. Defendant still did not honor the claim and did not appoint an appraiser, causing plaintiff to file the instant lawsuit in March, 1985. In answer to the complaint, defendant denied breaching the insurance contract and asserted as an affirmative defense that plaintiff had failed to properly document her claim. The remainder of the house was demolished on January 31, 1986, by order of the township, which had delayed the demolition of the house for two years to give the parties an opportunity to resolve the matter and possibly rebuild the house. On February 12, 1986, twenty-five months after the fire and two weeks after the house was demolished, defendant forwarded $30,000 to plaintiff, representing $20,000 for the structure and $10,000 for contents.[1]

On August 19, 1986, the appraiser filed a notice of appraisal which concluded that the replacement cost value of the house was $52,445 and the actual cost value was $44,578.55. Defendant filed a mo-

[1] This was in addition to the $4,478.50, of which $3,630 was for living expenses, $600 for contents and $248.50 for replacement of the home, which defendant had previously paid plaintiff prior to the institution of the lawsuit.

tion to set aside or modify the appraisal award because of errors in the calculation of the award, with the trial court denying that motion.

Defendant thereafter sent a letter to plaintiff's attorney asking that he confirm a remaining balance of $55,145.05 owing to plaintiff, which included replacement costs. Plaintiff's attorney replied that that was incorrect because the total amount owing, including replacement costs, was $63,011.50. Plaintiff offered to forgo any prejudgment interest if defendant paid the replacement cost immediately.

On November 19, 1986, defendant filed a motion to enforce the appraisal award and plaintiff replied with a cross-motion for summary disposition. Following the hearing on the motion, the trial court concluded that plaintiff was due replacement cost value even though she did not repair, replace or rebuild her house in accordance with policy requirements because defendant's delay had made it impossible for plaintiff to comply with the policy provisions. The trial court found it inequitable to penalize the plaintiff when defendant's twenty-five month delay in paying any substantial amount prevented plaintiff from rebuilding her house. The trial court further found that defendant should pay prejudgment interest because plaintiff was forced to file suit to collect on her claim.

On December 22, 1986, an order of summary disposition was entered in accordance with the above rulings and defendant paid plaintiff $55,145.05 in partial satisfaction of the judgment. The remaining $7,866.45 of the judgment represents the difference between replacement cost value and actual cost value of the property.

Defendant first argues that the trial court erred in awarding plaintiff the replacement cost of her damaged property when plaintiff failed to repair,

rebuild or replace her home. "Replacement cost" policies are permitted by statute, but the statute requires the repair or replacement of the damaged property. MCL 500.2826; MSA 24.12826 provides as follows:

> Riders and endorsements may, in consideration of adequate premium or premium deposit, be added to the standard fire insurance policy, insuring property, whereby the insurer agrees to reimburse and indemnify the insured for the difference between the actual value of the insured property at the time any loss or damages' occurs, and the amount actually expended to repair, rebuild or replace with new materials of like size, kind and quality, but not to exceed the amount of liability covered by the riders or endorsements, such property as has been damaged or destroyed by fire or other perils insured against, except that there shall be no liability by the insurer under the terms of said riders or endorsements to pay the amount specified in the riders or endorsements unless the property damaged is actually repaired, rebuilt or replaced at the same or another site.

Consistent with the statute, the insurance policy at issue in the case at bar provides in pertinent part as follows:

> 3. Loss Settlement.
> a. Except as stated in Item b, covered loss to buildings under Coverages A and B will be settled at replacement cost without deduction for depreciation.
> (1) Settlement under replacement cost will not be more than the *smallest* of the following:
> (a) the limit of insurance under this policy applying to the building.
> (b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises.

(c) the amount necessarily spent to repair or replace the building intended for the same occupancy and use.

(2) When the cost to repair or replace is *more* than $1,000 or *more* than 5% of the limit of insurance in this policy on the building, whichever is less, we shall pay no more than the *actual cash value* of the damage *until* repair or replacement is completed.

(3) At your option, you may make a claim under this policy on an *actual cash value* basis for loss or damage to buildings. Within 180 days after loss you may make a claim for any additional amount on a replacement cost basis if the property has been repaired or replaced.

b. Covered loss to the following types of property will be settled at *actual cash value.* Payments will not exceed the amount necessary to repair or replace the damaged property, or the limit of insurance applying to the property, whichever is less.

(1) personal property and structures that are not buildings.

(2) carpeting, including wall to wall carpeting, domestic appliances, awnings, outdoor equipment and antennas, all whether or not attached to building.

The interpretation of this fire insurance policy provision is an issue of first impression in Michigan. However, the issue has been considered in other jurisdictions. Specifically, the trial court relied upon *Zaitchick v American Motorists Ins Co,* 554 F Supp 209 (SD NY, 1982). In *Zaitchick,* the defendant insurance company refused to pay a fire insurance claim because it suspected the plaintiff of arson and because it claimed that the plaintiff made an exaggerated claim. The trial court found that the defendant had not sustained its burden of proof with regard to the arson charges or the charge of exaggerated claims. *Id.* at 215. In finding

that replacement cost value was the appropriate measure of damages, instead of actual cost value, the court stated:

> I find that both case law and equitable considerations render replacement cost the appropriate method of valuing plaintiffs' damages. The defendant does not challenge the plaintiffs' contention that a bank would be chary to lend money on the basis of an unlitigated law suit in which the defendant and its vast resources intend to present several defenses to payment. Nonetheless, defendant asserts, case law precludes plaintiffs' recovery of replacement value, citing *American Universal [Ins Co v Falzone*, 644 F2d 65 (CA 1, 1981); *Kolls v Aetna Casualty & Surety Co*, 503 F2d 569 (CA 8, 1974); *Lerer Realty Corp v MFB Mutual Ins Co*, 474 F2d 410 (CA 5, 1973); *Bourazak v North River Ins Co*, 379 F2d 530 (CA 7, 1967); *Higgins v Ins Co of North America*, 256 Or 151; 469 P2d 766 (1970)]. These cited cases, however, are distinguishable from the instant case. In all the relevant cases cited by defendant save *Lerer Realty*, the defendant paid actual cash value, and was only litigating the issue of whether additional monies would be due under the relevant replacement cost contract provisos. Thus plaintiffs in the cited cases had at least some money with which to begin rebuilding their property.
>
> The language of the Zaitchicks' insurance contract also supports my emphasis on whether cash value has been paid or not. The contract states that "[t]he Named Insured may elect to disregard this [replacement cost] condition in making claim hereunder, but such election shall not prejudice the Named Insured's right to make further claim within 180 days after loss for any additional liability [for replacement cost]." Defendant's Exhibit M, "Additional Conditions," ¶ 1(f). In other words, insureds can obtain the necessary funds to begin rebuilding their home, and subsequently upon completion of the construction, obtain additional amounts up to the replacement value. In the in-

stant case, plaintiffs were refused any monies under the insurance contract. Not surprisingly, they were unable to replace their home. This conduct by defendant made it impossible for plaintiffs to fulfill the condition precedent, and therefore, excuses plaintiffs from performance of the replacement condition. [554 F Supp 217.]

While Zaitchick is foreign law, the concept of not permitting an insurance company to benefit from its own misdeeds is not foreign to the jurisprudence of this state. In *Wendt v Auto-Owners Ins Co*, 156 Mich App 19, 27-28; 401 NW2d 375 (1986), which considered a somewhat different question than that presented in the case at bar, this Court held that an insurance company is liable for its conduct and may suffer a pecuniary loss as a result of that conduct even where a loss would not ordinarily be imposed by statute:

> We see no reason to hold an insurer less accountable for its actions than another contracting party. Consequently, we hold that the breach of an insurer's obligation to process a claim in good faith renders an insurer liable for pecuniary losses which are not otherwise compensated for by statute.

In the instant case, defendant impeded any progress in this matter by refusing to deal with plaintiff prior to her contacting an attorney, by failing to appoint an appraiser after plaintiff's attorney requested they do so and by forcing plaintiff to bring this law suit. Defendant failed to make any substantial payment to plaintiff until twenty-five months after the fire. Defendant does not even argue any good faith defenses to its actions of delay. At most, in its answer to plaintiff's complaint, defendant asserted as an affirmative defense that plaintiff failed to provide proper docu-

mentation of her loss. Defendant does not argue this defense on appeal. We conclude that, in the face of such lack of good faith processing of plaintiff's claim, the trial court correctly chose to award the replacement cost value to plaintiff based upon equitable considerations.

In short, defendant's failure to pay on the claim hindered, and quite possibly even prevented, plaintiff from complying with her obligation to repair or replace the building. Had defendant immediately paid in good faith the actual cash value of the loss, holding the additional amount due under the replacement cost provision in reserve until the replacement was made or contracted for, or had otherwise worked with plaintiff to insure her financial ability to immediately proceed with the replacement or repair, a different result might be called for. However, defendant did not work with plaintiff to promptly pay the claim and enable her to repair or replace the building; rather, it did as much as possible to hinder plaintiff and delay or prevent the payment of the claim. We will not now allow defendant to raise as a defense plaintiff's failure to perform an act which defendant itself greatly hindered plaintiff from performing. See *Woody v Tamer*, 158 Mich App 764, 772; 405 NW2d 213 (1987) (where a duty to perform has been rendered impossible, the failure to perform the duty is not a breach of contract).

For the above-stated reasons, we conclude that the trial court properly determined that plaintiff was excused from performing her obligation under the policy to repair or replace the building due to defendant's dilatory tactics.

Defendant also argues that the trial court improperly awarded prejudgment interest. The trial court properly awarded prejudgment interest. See

*Linford Lounge, Inc v Michigan Basic Property Ins Ass'n,* 77 Mich App 710, 713-714; 259 NW2d 201 (1977).

Affirmed. Plaintiff may tax costs in this Court.