ANNETTE BAILEY, APPELLEE, V. FARMERS UNION CO-OPERATIVE
INSURANCE COMPANY OF NEBRASKA, APPELLANT.

498 N.W.2d 591

Filed December 22, 1992.    No. A-91-1158.

Dennis C. Magnuson and William E. Gast, of Gast & Peters, for appellant.

Thomas J. Guilfoyle, of Frost, Meyers, Guilfoyle & Govier, for appellee.

SIEVERS, Chief Judge, and CONNOLLY and MILLER-LERMAN, Judges.

CONNOLLY, Judge.

## I. INTRODUCTION

This appeal arises out of an action for recovery on an insurance policy. Appellee, Annette Bailey, sued appellant, Farmers Union Co-operative Insurance Company of Nebraska (Farmers Union), on two theories. In contract, Bailey sought recovery of the proceeds allegedly due under her homeowner's policy following the collapse of her home. In tort, Bailey claimed damages for Farmers Union's alleged bad faith in refusing to pay the claim resulting from the destruction of the home. In a trial to the bench, the Douglas County District Court ruled in favor of Bailey on both claims. Bailey was

awarded $69,450 for benefits due under the policy and $150,000 for mental suffering on the bad faith claim. We affirm.

## II. FACTS
### 1. THE LOSS OF BAILEY'S HOME

Prior to the series of events leading to her cause of action, Bailey owned and lived in a home at 815 Pacific Street, Omaha, Douglas County, Nebraska. In the summer of 1988, Bailey participated in a city-sponsored renovation project for older neighborhoods. In conjunction with the project, Bailey obtained a first mortgage loan for $10,200.82 from American Charter Federal Savings and Loan Association (American Charter) and, at American Charter's request, acquired a homeowner's insurance policy with Farmers Union. Bailey then hired Ace Building Movers (Ace) to build a basement under the existing house.

Ace began excavation under half of the house in early August. On August 11, 1988, the house collapsed into the excavation hole, resulting in a total loss of Bailey's home. Ted T. Sokol, Ph.D., a registered professional engineer consulted by Farmers Union, determined that "the cause of the collapse of this structure was the inadequate temporary bracing system utilized to support the structure during the excavation operation." The city condemned the house, and Farmers Union's file status notes on the Bailey claim confirm the total loss of the structure.

At the time of the loss, Bailey suffered from lupus and was on full disability. For the first few days after the loss, Bailey and her two children slept on the lawn. Bailey then farmed her children out to friends and secured for herself temporary lodging with her estranged sister. Eventually, Bailey rented an apartment. Despite her doctor's advice to the contrary, Bailey got a job in order to furnish her apartment, pay the rent, and keep up with the mortgage payments to American Charter.

### 2. TERMS OF THE POLICY

Bailey's policy with Farmers Union covered loss for collapse caused by use of defective materials and methods in renovation if the collapse occurred during the course of the renovation. The collapse of Bailey's home resulted from Ace's use of an

inadequate bracing system to support the house during excavation, a fact confirmed by Farmers Union's investigations.

Bailey's home was insured for replacement costs up to $52,000, without deduction for depreciation. Bailey's policy obligated Farmers Union to cover the least expensive of three alternatives: (1) the $52,000 limit of liability under the policy that applied to the home, (2) the replacement cost of the home for like construction and use on the same premises, or (3) the necessary amount actually spent to repair or replace the home. Regarding expenditures to repair or replace, Farmers Union was obligated to pay no more than the actual cash value of the damage unless the actual repair or replacement was complete.

In addition, Bailey had the option of first seeking immediate actual cash value recovery and then seeking additional recovery for replacement costs within 180 days of the loss. Under this option, the insured was entitled to replacement costs up to the $52,000 limit, less the amount already received as actual cash value. Bailey wanted to pursue this option.

### 3. FARMERS UNION RESISTS BAILEY'S CLAIM

On August 12, 1988, the day after the collapse, John Elbert, vice president of the claims department at Farmers Union, prepared a worksheet for Tony McLaughlin, a field adjuster, with instructions not to make any commitments to Bailey because "we may want to tell [Bailey that she] probably [is] not covered." Although Elbert mistakenly presumed the day after the collapse that Bailey's loss was not covered, collapse during and because of defective renovation is specifically covered on page 5 of the insurance policy.

Elbert's records subsequent to his initial analysis indicate that he realized that Bailey's loss was covered. In his own file status notes of August 16, 1988, Elbert wrote, "[T]his is a covered loss." On August 24, McLaughlin, working under Elbert's supervision, wrote a letter to American Charter confirming Farmers Union's position that "the insurance policy Ms. Bailey carries with our company will provide coverage for this loss." In his file status notes of August 30, Elbert noted that Barb Morrison of the Nebraska Department

of Insurance told him over the phone that she could not see why anyone would want to defend against a claim such as Bailey's.

There was some internal brainstorming about possible defenses to Bailey's claim, including McLaughlin's suggestion that Farmers Union might offer an "earth movement" defense, though the policy clearly indicates that earth movement refers to a natural disaster such as an earthquake. Apparently, Elbert seriously considered earth movement as a plausible defense, because Bailey's former attorney testified at trial that Elbert did propose earth movement as a defense. Bailey's attorney dismissed the proposition as "rather absurd." The earth movement defense was not pursued.

In file status notes of January 13, 1989, Elbert apparently considered refusing coverage on grounds that the foundation of the home had deteriorated prior to the collapse. However, "hidden decay" and "hidden insect or vermin damage" are covered under the collapse provision of the policy. In any event, it was the defective workmanship of Ace that caused the collapse, and again, contrary to Elbert's assertion in his notes, defective workmanship is covered whether characterized as construction, remodeling, or renovation.

Apparently, Elbert reviewed the policy after making the notations of January 13, because the defense of deterioration was never used against Bailey. The only defenses articulated by Farmers Union are (1) that Bailey failed to satisfy the 180-day time limit for claiming replacement costs, which of course did not arise until 6 months after the loss, and (2) that Bailey forfeited coverage by failing to submit a sworn proof of loss statement within 60 days after the statement was requested by Farmers Union.

Elbert determined on August 16, 5 days after the collapse, that the loss was covered. From that point on, the record contains evidence—the policy, the Sokol report, and Elbert's subsequent file status notes—confirming Elbert's determination of August 16.

With respect to Bailey, though, Farmers Union maintained its initial posture of resistance to her claim. In a letter to Bailey dated October 7, 1988, Elbert wrote:

[T]his settlement offer [$11,900, the actual cash value of

the home minus the $100 deductible] is voluntary on the part of Farmers Union . . . and represents an effort to bring this doubtful and disputed claim to a close. The insurance coverage in this regard is questionable and it is our discretionary decision to tender this offer to you in an effort to avoid costly and time consuming litigation.

. . . .

Please be advised that our file contains an agreement signed by Clyde S. Pedersen indicating that Ace Building Movers will tear down and haul away [your collapsed home] at no charge to us or to you. You are aware that the [city] has scheduled a condemnation hearing for October 13, 1988[,] in this regard. Should the [c]ity be allowed to proceed with demolition of your dwelling, we will not reimburse you or make payment to the [c]ity for the cost of demolition. . . . [I]t is most important to you to provide both Farmers Union . . . and Ace Building Movers with written permission to proceed as soon as possible with demolition.

Elbert concluded the letter by informing Bailey that if she did not accept the settlement offer, Farmers Union "would have no alternative" but to withdraw the offer and prepare to defend itself in court. Enclosed with the letter was a form entitled "Sworn Statement in Proof of Loss." Except for the signatures by the insured and a notary public, every entry on the form was already filled in, including $12,000 for the actual cash value, $100 for the deductible, and $11,900 for the amount claimed.

Elbert's file status notes of October 18, 1988, indicate a phone conversation with Bailey's attorney, in which conversation Elbert told the attorney that there was enough case law to show that Farmers Union owed Bailey only the actual cash (fair market) value of the home, regardless of whether rebuilding costs exceeded the actual cash value.

On January 6, 1989, Bailey rejected the offer of final settlement contained in Elbert's October 7, 1988, correspondence. Bailey declared her intention to exercise the option in the policy allowing her to make an immediate claim for actual cash value of the home and then claim within 180 days of the loss the actual replacement cost of rebuilding the

home, less the actual cash value received. Bailey calculated replacement costs at $50,449. Given the $52,000 liability ceiling, she demanded $16,700 in actual cash value and explained to Farmers Union that she planned to claim another $35,500 in additional replacement costs. Bailey also demanded compensation for loss of personal property, cost of additional living expenses, and cost of demolition of the collapsed house.

Elbert's file status notes of January 13, 1989, indicate that he told Bailey's attorney that the actual cash value figure was the total value of the claim and that Farmers Union would not cover repair and replacement costs. In a letter of January 26, following up on the January 13 phone conversation, Elbert wrote, "If we make a replacement settlement based on the market value of the dwelling, that would be a total and final settlement and would not trigger the replacement cost coverage clause contained in the contract." In a variation on the same theme, on February 16, Elbert informed Bailey that Farmers Union was offering "to purchase another dwelling of like kind and quality (replace) as this involves the least amount of cost of our three settlement options."

Bailey very much wanted to rebuild her home on site. She liked her neighborhood, and her property was specially zoned so that she could raise geese, ducks, chickens, and a turkey in her yard. On March 21, 1989, Bailey's attorney wrote back to Elbert and rejected the idea that Farmers Union could meet its obligation under the policy by putting Bailey in a new dwelling on a new site as long as the purchase price of the new dwelling was equal to the actual cash value of Bailey's home:

> You seem to indicate that you may simply base your replacement cost values upon the fair market value of the home at the time of the accident. This is clearly wrong. Replacement value under the terms of this policy means exactly that—replacement value—not fair market value.

Bailey's attorney also explained that because demolition by the city would proceed at Bailey's expense unless repair was commenced within 30 days, the obstinacy of Farmers Union on the issue of replacement cost coverage was creating a crisis. Bailey would be charged for the demolition, and the opportunity to repair the structure would be lost.

Elbert would not yield. In a letter dated March 30, 1989, he insisted that Farmers Union was complying with the policy, because its offer "replaces the entire dwelling with one of like kind and quality and in the same neighborhood area." Still referring to Bailey's claim as "doubtful and disputed," Elbert asserted that "repair is not the least costly of the settlement options and therefore, is not a viable consideration as a settlement alternative."

In the words of both parties, negotiations "stalled out" over this disagreement on policy provisions concerning replacement value.

### 4. Lawsuit Filed

Bailey sued Farmers Union for breach of contract based on the company's refusal to (1) permit Bailey to rebuild on site, (2) pay the actual cash value of lost personal property, (3) pay for additional living expenses resulting from the collapse, and (4) pay for demolition and removal of debris. Bailey also sued in tort for mental suffering on grounds that Farmers Union acted in bad faith by refusing without any reasonable basis to cover Bailey's claim in full.

Farmers Union answered that Bailey had (1) forfeited coverage rights by failing to submit a sworn proof of loss form, (2) failed to itemize her property losses, and (3) failed to mitigate her property losses, expenses for demolition, and additional living expenses. Farmers Union also "vigorously" denied that Bailey had experienced mental suffering and insisted that even if Bailey had suffered mentally, it was due to her breach of contract and refusal to accept Farmers Union's settlement offer.

### 5. The Trial

At trial, Bailey called Elbert as her witness and introduced into evidence the various file status notes and correspondence discussed above. Bailey also called John Grant, former general counsel for the Nebraska Department of Insurance, to give expert testimony on whether the Bailey claim was handled properly by Farmers Union, and Lawrence Hunt, a registered professional architect, to verify the cause of collapse and explain his replacement cost estimate of $53,300.

Farmers Union called expert witnesses to dispute the value of the home and the cost of replacement. The company also called as a witness the attorney who represented Bailey from October 1988 until November 1990, the time period in which the negotiations with Elbert took place. Farmers Union tried to show that it was the incompetence or guile of Bailey's former attorney that prevented settlement of the claim.

The trial court made the following findings of fact: (1) Farmers Union's offer of coverage was limited to the company's actual cash value figure of $11,900, with no allowance for replacement costs as provided in the policy; (2) Elbert was lying when he suggested in his testimony that Farmers Union had always intended to provide replacement cost coverage per the policy; (3) Farmers Union intended from the outset to " 'get out of this claim' " or " 'pay less than our insured rightfully deserved' "; (4) Farmers Union's conduct was "almost criminal," as it exploited its corporate advantage in what should have been a fiduciary relationship with a poor, disabled, black woman suffering from lupus and raising two children, who suddenly found herself with no place to live and with no means of rebuilding her home without the cooperation of Farmers Union; (5) the intransigence of Farmers Union prevented Bailey from complying with the policy provision requiring her to rebuild and claim replacement costs within 180 days of the loss; and (6) the policy provisions and nature of the loss were clear enough that there was no basis for Farmers Union to dispute Bailey's insistence that replacement costs were covered and would run to the limits of the policy.

The court found Farmers Union's conduct "replete with bad faith." The trial court awarded damages to Bailey in the amount of $52,000 for replacement of the home, $11,850 for living expenses, $3,000 for personal property, $2,600 for removal of debris, and $150,000 for mental suffering.

### III. ASSIGNMENTS OF ERROR

The assignments of error will be addressed individually in the analysis.

### IV. STANDARD OF REVIEW

Regarding a question of law, an appellate court has an

obligation to reach a conclusion independent of that of the trial court. *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992); *Kaiman v. Mercy Midlands Medical & Dental Plan, ante* p. 148, 491 N.W.2d 356 (1992).

In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside unless clearly erroneous. However, when such judgment is not supported by the evidence, it is clearly wrong and must be set aside. *Nebraska Builders Prod. Co. v. Industrial Erectors, supra*; *Hickman v. Hunkins, ante* p. 25, 489 N.W.2d 316 (1992).

On review of a judgment in a bench trial of a law action, an appellate court does not reweigh the evidence; it considers the evidence in a light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Nebraska Builders Prod. Co. v. Industrial Erectors, supra*; *Nichols Media Consultants v. Ken Morehead Inv. Co., ante* p. 220, 491 N.W.2d 368 (1992).

In a bench trial of a law action, the court, as the trier of fact, is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990); *Nichols Media Consultants v. Ken Morehead Inv. Co., supra*.

## V. ANALYSIS

Assignment of error No. 1:

> The court erred when it determined that the Appellee was entitled to replacement cost coverage notwithstanding the fact that she failed to comply with the terms of her policy requiring her to rebuild or replace the insured premises within 180 days after loss and make claim for the cost of such replacement.

Farmers Union correctly points out that Bailey failed to comply with the term in her policy requiring her to rebuild the house and then make claim for replacement costs within 180 days of loss. Farmers Union cites case law from other jurisdictions supporting the principle that, as a means of preventing fraud by the insured, the insurer has a right to enforce a provision insisting on completion of repair before

payment of replacement costs. However, Bailey argued, and the trial court found, that the intransigence of Farmers Union prevented Bailey from complying with the 180-day condition. None of the cases cited by Farmers Union addressed the scenario in which the insured failed to meet a time deadline because of the interference of the insurer.

Bailey wanted to rebuild her home as quickly as possible. She wanted to exercise the option in the policy allowing her to accept an immediate actual cash value settlement and then rebuild and claim replacement costs within 180 days of the loss. Bailey was prevented from complying with the time deadline in the policy by Elbert's insistence that Bailey was entitled to receive nothing more than actual cash value. Bailey could not proceed with rebuilding as long as Farmers Union refused to commit itself to future reimbursement of Bailey for rebuilding costs. She did not have the money to initiate rebuilding on her own, and she would not have been able to secure a loan without the assurance by Farmers Union that additional replacement costs would be covered up to the policy limit. Though required to do so under the policy, Farmers Union never made that commitment.

In February 1989, Elbert offered to put Bailey in another house of equal actual cash value in the neighborhood. That was not what Bailey wanted and not what the policy provided for. Bailey wanted to rebuild her home on site, and the policy clearly provided for onsite rebuilding. Nevertheless, Farmers Union persisted in offering either actual cash value or another house of equal value, and nothing more for rebuilding.

Bailey was prevented from satisfying the condition of rebuilding and claiming costs within 180 days by Farmers Union's refusal to assure Bailey that, in addition to the actual cash value figure, the cost of rebuilding her home would be covered up to the policy limit. A condition is excused if the occurrence of the condition is prevented by the party whose performance is dependent upon the condition. *Chadd v. Midwest Franchise Corp.*, 226 Neb. 502, 412 N.W.2d 453 (1987). Though in Nebraska this general principle of contract law has not yet been applied specifically to a set of facts analogous to those of the case at bar, we are persuaded by the

reasoning of the Michigan Court of Appeals in *Pollock v Fire Ins. Exchange*, 167 Mich. App. 415, 423 N.W.2d 234 (1988), that an insured should not be barred from recovery for failure to rebuild within the time constraints of the policy when the conduct of the insurer prevented the insured from rebuilding.

In *Pollock*, the plaintiff's home was damaged by fire. The defendant, a fire insurance company, denied the plaintiff's claim. Two years later, after the plaintiff had already filed suit against the insurance company, the city condemned and demolished the plaintiff's home. The plaintiff then sued for replacement costs. The insurance company defended on grounds that the plaintiff had not actually rebuilt the home and had thereby failed to satisfy a condition for claiming replacement costs. The appellate court upheld the trial court's decision to award the plaintiff replacement costs because the conduct of the insurance company had prevented the plaintiff from fulfilling the condition of rebuilding. "We will not now allow defendant to raise as a defense plaintiff's failure to perform an act which defendant itself greatly hindered plaintiff from performing." *Pollock*, 167 Mich. App. at 422, 423 N.W.2d at 237. We adopt this rule and apply it to the case at bar.

In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside unless clearly erroneous. *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992). As an appellate court, we do not reweigh the evidence; we consider it in a light most favorable to the successful party and resolve evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Id.*

The trial court found that the conduct of Farmers Union prevented Bailey from rebuilding within 180 days. Reviewing the evidence in a light most favorable to Bailey, we cannot say that the trial court was clearly wrong in finding that Farmers Union hindered Bailey in her effort to rebuild within 180 days.

Assignment of error No. 2:

> The court erred when it held that Appellant's conduct gave rise to a claim for bad faith, when a good faith effort was made by Appellant to settle the claim of an insured and reasonable settlement offers based on competent

valuations were made on a continuing basis by the insurer during the pendency of the claim.

An insured seeking damages for bad faith settlement of an insurance claim must prove (1) that there was no reasonable basis for denying the claim and (2) that the insurer knew of, or recklessly disregarded, the lack of a reasonable basis for denying the claim. *Ruwe v. Farmers Mut. United Ins. Co.*, 238 Neb. 67, 469 N.W.2d 129 (1991); *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991). In the case at bar, the settlement process stalled out over the extent of coverage. Therefore, Bailey had to prove (1) that there was no reasonable basis for denying coverage for replacement costs and (2) that Farmers Union knew of, or recklessly disregarded, the lack of a reasonable basis for denying coverage for replacement costs.

Bailey's policy clearly covers collapse due to defective renovation work and provides coverage for rebuilding on site. Elbert's file status notes of August 16, 1988, 5 days after the loss, state, "[T]his is a covered loss." Farmers Union assured American Charter in writing that Bailey's loss was covered. In response to Elbert's request for an opinion on the Bailey claim, Barb Morrison, of the Nebraska Department of Insurance, said she could see no basis for denying coverage. There is, then, evidence in the record supporting the trial court's finding that Farmers Union knew there was no reasonable basis for attempting to coerce Bailey into accepting a settlement without provision for rebuilding costs.

At trial, Elbert testified that settlement was prevented by the inability or unwillingness of Bailey's attorney to explain to Bailey that replacement costs would be covered. Rejecting that contention as "unadulterated hogwash," the trial court called Elbert a liar in open court and castigated Farmers Union for the "almost criminal" effort to force Bailey to accept actual cash value as total satisfaction on the claim even though she was entitled to replacement costs. Severe though it is, we do not disturb this finding of fact because in a bench trial of a law action, the court, as the trier of fact, is the sole judge of the credibility of witnesses and the weight to be given their testimony. See *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990).

Reviewing the evidence in a light most favorable to Bailey, we cannot find that the trial court was clearly wrong in finding bad faith on the part of Farmers Union. This assignment of error has no merit.

Assignment of error No. 3:

> The court improperly allowed the expert testimony of John Grant on the issue of "bad faith."

Bailey called as an expert witness, John Grant, former general counsel for the Nebraska Department of Insurance, who had an opportunity before trial to review the correspondence, depositions, and file status notes related to the Bailey case. Though not set out in the assignment of error, the argument in Farmers Union's brief is that Grant was asked to give his opinion of the state of the law in the area of bad faith and that expert testimony concerning a question of law is generally not admissible in evidence. See *Kaiser v. Western R/C Flyers*, 239 Neb. 624, 477 N.W.2d 557 (1991).

On direct examination, Grant was asked whether "the claims practices in this case conformed with the standard of care for handling claims in the Omaha or Lincoln areas." Farmers Union objected "to the expert giving . . . that opinion when the true and proper subject for his opinion should be the reasonableness of claim denial as opposed to just some broad opinion [of] how the claim was filed." The objection was overruled, and Grant was permitted to continue.

To the question on standard of care, Grant responded, "I believe that the company in this particular matter did not handle the claim properly, did not handle the claim in good faith." He testified that, in his opinion, there was no reasonable basis for denial of coverage. Grant also said that he believed Farmers Union was aware that there was no reasonable basis for denial of coverage. In Grant's opinion, internally Farmers Union believed the claim was covered, but externally the company disputed coverage and then refused to acknowledge coverage to the full extent available under the policy.

After the initial objection quoted above, Farmers Union did not raise any further objections during the remainder of Grant's direct examination. Farmers Union never raised a specific objection that the expert was testifying on a question of law,

which is the basis of this assignment of error.

A prerequisite to an appeal based upon the erroneous admission of evidence is a timely objection stating the specific grounds for the objection unless the grounds are apparent from the context of the record. *State v. Cave*, 240 Neb. 783, 484 N.W.2d 458 (1992). At trial, Farmers Union's reference to "some broad opinion [of] how the claim was filed" does not state the specific issue of expert testimony on a question of law. There are no subsequent objections in the record that make apparent the nature of the specific issue raised on appeal. Failure to make a timely objection to evidence results in a waiver of the right on appeal to assert prejudicial error concerning the evidence received without objection. *Id.*

After failing to make a timely and specific objection, Farmers Union proceeded with extensive cross-examination of Grant and never moved to strike Grant's testimony. In *Uryasz v. Archbishop Bergan Mercy Hosp.*, 230 Neb. 323, 431 N.W.2d 617 (1988), the Nebraska Supreme Court held that there was no error in the admission of potentially objectionable expert testimony because at trial the defendant failed to object when the testimony was produced, waived objection by conducting cross-examination, and did not later move to strike the testimony. Therefore, this assignment of error is without merit.

Even if, arguendo, the admission of Grant's testimony had been error, it would have been harmless. Grant's testimony constituted cumulative evidence. An erroneous admission of evidence during a bench trial will not result in a reversal if there is relevant and admissible evidence to sustain the trial court's judgment. *Gibson v. City of Lincoln*, 221 Neb. 304, 376 N.W.2d 785 (1985). In discussing the bases of its findings, the trial court made several references to the notes, letters, and intracompany instructions of Elbert and to the clarity of the terms of the policy. No mention was made of Grant's testimony. There was ample admissible evidence in the record to support a finding of bad faith without Grant's testimony.

Assignment of error No. 4:

> The court erred when it failed to hold that an insured has a duty under the policy language to minimize the damage suffered by the insurer after a loss, and to take

reasonable steps to prevent further loss from occurring.

Farmers Union argues that Bailey violated the terms of the policy by failing to mitigate damages following the loss. At trial, the parties stipulated to a judgment in the amount of $3,000 for Bailey's personal property losses. On appeal, only Bailey's rental expenses and the cost of the demolition and removal of the collapsed house are subject to the mitigation argument.

Farmers Union correctly says that it offered to have the structure demolished and removed at no charge. However, that offer was part of a package deal in which Bailey had to accept an actual cash value settlement as total satisfaction on the claim. Farmers Union was offering free demolition if Bailey would renounce her claim to replacement costs. Once again, on appeal Farmers Union is attacking Bailey for not having taken a certain course of action, when in fact it was the conduct of Farmers Union that prevented Bailey from taking the course of action. Farmers Union cannot claim that Bailey failed to mitigate damages by accepting free demolition when Farmers Union made free demolition contingent upon forfeiture of the claim to replacement costs.

The same rationale applies to the issue of rental expenses. Farmers Union says that Bailey could have limited her claim for additional living expenses to a few months' rent by immediately accepting the actual cash value offer and rebuilding her house. By refusing to commit itself to coverage of rebuilding costs, Farmers Union prevented Bailey from rebuilding her house and forced her to continue living in an apartment. This assignment of error has no merit because Bailey was prevented from mitigating her rental expenses by the unreasonable conduct of Farmers Union.

Assignment of error No. 5:

> The court erred when it determined that the Appellee was entitled to replacement cost coverage notwithstanding the fact that she failed to comply with the terms of her policy with regard to the requirement for a signed, verified proof of loss.

Farmers Union cites *Lonsdale v. Union Ins. Co.*, 167 Neb. 56, 91 N.W.2d 245 (1958); *Swedberg v. Battle Creek Mut. Ins.*

*Co.*, 218 Neb. 447, 356 N.W.2d 456 (1984); and a host of similar Nebraska cases to support the proposition that an insurance contract should be enforced according to its plain, unambiguous terms and that Bailey failed to comply with a plain and unambiguous provision concerning the filing of a sworn proof of loss. However, the provision of Bailey's policy, which is quoted by Farmers Union in its brief, requires the insured to "send to us, within 60 days *after our request*, [a] sworn proof of loss." (Emphasis supplied.) The plain and unambiguous meaning of the provision is that the requirement to file a sworn proof of loss is triggered only if Farmers Union requests submission of a sworn proof of loss.

Bailey cites *Brinkman v. Aid Ins. Co.*, 115 Idaho 346, 766 P.2d 1227 (1988), in which the court rejected the insurer's argument that the insured forfeited coverage by failing to submit a sworn proof of loss. The insured's policy required submission of a sworn proof of loss only upon request by the insurer. The insurer had never made such a request, so the filing requirement was never triggered. There was no forfeiture of coverage in *Brinkman*, and Bailey argues that under the same reasoning there was no forfeiture of coverage in the case at bar.

We approve of the rule in *Brinkman*, and under the facts of this case, we hold that under a policy that requires the insured to submit a sworn proof of loss statement if requested to do so by the insurer, there can be no forfeiture of coverage due to failure by the insured to submit a sworn proof of loss statement unless the trier of fact finds that the insurer made a request for the statement.

Farmers Union claimed that Elbert's letter and enclosure of October 7, 1988, constituted a request for a sworn proof of loss. The letter read in part: "Please find enclosed for your review a Sworn Statement in Proof of Loss. When we receive this form with you[r] notarized signature we will issue our check payable to you and the lienholder in the amount of $11,900.00." Enclosed with the letter was a proof of loss form, already prepared by Farmers Union, asserting that the full and complete claim under the policy was $11,900.

Though the trial court's finding on the issue of the sworn proof of loss is not preserved in the record on appeal, we

conclude that the trial court found that Bailey did not forfeit coverage because the letter of October 7 was not a request triggering the 60-day deadline for submission of a sworn proof of loss. See *Burgess v. Curly Olney's, Inc.*, 198 Neb. 153, 251 N.W.2d 888 (1977) (general finding for certain party warrants conclusion that trial court found in that party's favor on all issuable facts).

We cannot say the trial court was clearly wrong in finding that the letter of October 7 was not a request. Indeed, the letter could more accurately be characterized as an ultimatum. Farmers Union did not request a sworn proof of loss, but, instead, provided a completed form, signature on which would have waived the insured's rights to any further recovery on her "doubtful and disputed claim." We do not find clear error in the trial court's finding that Farmers Union never made a request for a sworn proof of loss as provided for in Bailey's policy.

Assignment of error No. 6:

> The court erred when it determined that the Appellant's alleged failure to explain the replacement cost coverage provisions of an insured's policy to her is evidence of "bad faith" when the insured was represented by an attorney at the time of the alleged failure to explain.

Farmers Union contends that Bailey mistakenly got the impression that she was being forced to accept actual cash value as total satisfaction and that if Bailey's attorney had properly explained the settlement offer to Bailey, the claim would have been resolved without incident. Farmers Union accused Bailey's attorney of purposely sowing confusion into the relationship between insured and insurer so that the legal battle would drag on and thereby fatten the attorney's contingent fee. The trial court characterized that line of argument as "despicable" and "unworthy of counsel," even in an adversarial proceeding.

The record indicates that both Bailey and her attorney understood exactly what was being offered. Upon receiving Elbert's October 7, 1988, letter offering $11,900 actual cash value as total satisfaction on the claim, Bailey "blew up" and called a lawyer because she realized that Farmers Union was refusing to cover the cost of rebuilding her house. Her attorney

also understood that Farmers Union was trying to avoid its obligation to cover replacement costs by characterizing the purchase of another house in the neighborhood as replacement under the terms of the policy. Elbert, too, perceived the obstacle to settlement in his letter of March 30, 1989, to Bailey's attorney: "[In] your [previous] letter you strike at the heart of our problem . . . . You maintain our interpretation of replacement value is incorrect and we maintain it is correct."

The record, then, supports the trial court's finding that there was no misunderstanding or confusion on the part of those involved in the negotiations. Thus, we cannot say the trial court was clearly wrong when it found there was irreconcilable disagreement, not misunderstanding or failure of communication. This assignment of error is without merit.

Assignment of error No. 7:

> The [c]ourt erred in awarding the Appellee damages for mental distress, as Appellee did not offer any evidence of mental distress at trial.

The Nebraska Supreme Court has recognized mental suffering as a basis for recovery under the tort of bad faith, regardless of whether there is physical injury. *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991). Citing *Tetherow v. Wolfe*, 223 Neb. 631, 392 N.W.2d 374 (1986), for the proposition that damages must be proximately caused by the tortious conduct, *Braesch* explained that in a bad faith action, the crucial issue in finding mental suffering is proximate cause, not physical injury. See, also, *James v. Lieb*, 221 Neb. 47, 375 N.W.2d 109 (1985) (recovery solely for mental distress was recognized in negligence action even though there was no physical injury).

An ultimate fact fairly and reasonably inferable from the facts and circumstances proved is to be taken as established. *White v. Medico Life Ins. Co.*, 212 Neb. 901, 327 N.W.2d 606 (1982). As we noted in the discussion above of the first, second, and fourth assignments of error, there is evidence in the record to support the trial court's finding that the tortious conduct of Farmers Union was the proximate cause of the condition in which Bailey found herself. Therefore, we take as established the ultimate fact of proximate causation.

The Nebraska Supreme Court's two-part test for bad faith, set out above in our discussion of the second assignment of error, was adopted from *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978). See *Braesch v. Union Ins. Co., supra.* Concerning damages for emotional distress, *Anderson* stated that "[a] recovery for emotional distress caused by an insurer's bad faith refusal to pay an insured's claim should be allowed only when the distress is severe and substantial other damage is suffered apart from the loss of the contract benefits and the emotional distress." *Id.* at 696, 271 N.W.2d at 378. Thus, under the rule in *Anderson*, which we adopt and apply in this case, an insured claiming bad faith damages cannot recover for emotional distress simply by arguing that he or she suffered emotional distress because of the breach of contract from which the bad faith claim arose; there must be other injuries for which the insured is not compensated by the damages awarded for breach of contract, and those other injuries must cause *severe* emotional distress or mental suffering. Although there is a line of cases holding that emotional distress need not be severe to warrant recovery in a bad faith claim, see, *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 510 P.2d 1032, 108 Cal. Rptr. 480 (1973), and *Farr v. Transamerica Occidental Life Ins. Co.*, 145 Ariz. 1, 699 P.2d 376 (Ariz. App. 1984), we instead follow the proposition in the *Anderson* line of cases that in a bad faith claim, emotional distress must be severe in order to justify recovery.

The standard of appellate review on the issue of severe emotional distress depends on whether the issue is legal or factual. While we find no Nebraska case law directly on point, other jurisdictions offer persuasive instructions on how to analyze severe emotional distress. See, *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 544 A.2d 857 (1988) (severity of emotional distress raises question of law and fact, court decides whether as matter of law severe emotional distress can be found, and jury decides whether it has in fact been proved); *First Bank (N.A.)-Billings v. Clark*, 236 Mont. 195, 771 P.2d 84 (1989) (court has duty of determining threshold question of whether any proof of severe emotional distress exists sufficient to raise question of fact for jury); *Breeden v. League Services*

*Corp.*, 575 P.2d 1374 (Okla. 1978) (it is for the court to determine, in the first instance, based on evidence presented, whether severe emotional distress can be found and for the jury to determine whether it in fact existed); *Yarbray v. Southern Bell Telephone & Telegraph Company*, 261 Ga. 703, 409 S.E.2d 835 (1991) (if evidence shows that reasonable persons might find severe emotional distress, the jury then must find facts and make its own determination).

After reviewing authority from other jurisdictions, we adopt a two-part approach to consideration of severe emotional distress: (1) Whether the issue of severe emotional distress should be considered by the trier of fact is a question of law to be resolved by the court and (2) whether the insured has proved severe emotional distress is a question of fact to be resolved by the trier of fact. As a matter of law, we find, after review of the record as a whole, that there was sufficient evidence to warrant consideration of severe emotional distress by the trier of fact. Having made that determination, we must then determine whether the factual finding of severe emotional distress was clearly erroneous.

On review of a judgment in a bench trial of a law action, an appellate court does not reweigh the evidence; it considers the evidence in a light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992).

Farmers Union argues that the record "is completely devoid of evidence" supporting the trial court's finding that the hardships caused by Farmers Union's refusal to honor the policy constituted mental suffering severe enough to warrant additional damages. That assertion is without merit. Addressing Bailey personally, the trial court found that

> you are entitled under our bad faith tort to a $150,000 [damage award] for mental suffering for being without a home, a home that you made in a neighborhood that you lived in all your life, that your mother lived in, to be forced to live on the lawn, to live with a stranger, and then to pay rent . . . . [T]his is a reasonable figure for the mental

suffering you've undergone.

The trial court touched upon a few of the many specific injuries that would not be compensated by the damage award based on the policy. The record indicates that Bailey was on full disability due to lupus before the collapse of the home. After the loss, because Farmers Union refused to adequately honor the policy, Bailey had to place her two children with friends; she had to beg her estranged sister for temporary lodging; she was forced, against doctor's orders, to get a job in order to afford an apartment and keep up with mortgage payments; and she faced the frustration of dealing with an insurer that would not honor the terms of its own policy. "The intensity and the duration of the distress are factors to be considered in determining its severity." Restatement (Second) of Torts § 46, comment *j*. at 77-78 (1965). At the time of trial, it had been over 3 years since Bailey's home had collapsed. Because of Farmers Union's bad faith in handling her claim, Bailey was still living the makeshift existence described above, wondering whether she would ever get to rebuild her home.

The facts in *Eckenrode v. Life of America Insurance Company*, 470 F.2d 1, 2-3 (7th Cir. 1972), are analogous to those in the case before us:

> Insurer knew or should have known of the death of decedent from accidental causes and of [insured's] dire need of the policy proceeds. Yet Insurer repeatedly and deliberately refused [insured's] demands for payment, and as a proximate result [insured] was caused to suffer "severe distress . . . ." Instead of paying her the proceeds of the policy, and being fully aware of the accidental cause of decedent's death and of [insured's] financial distress, Insurer breached the policy promise to pay immediately upon proof of death. Insurer, knowing full well that [insured] needed the proceeds of the policy to provide necessaries for her children, applied "economic coercion" in refusing to make payment on the policy, and in "inviting" [insured] to "compromise" her claim by implying it (Insurer) had a valid defense to the claim.

The U.S. Court of Appeals for the Seventh Circuit found that the insured, Eckenrode, had suffered severe emotional distress

when her insurer failed to honor her policy claim.

In the case before us, Farmers Union knew of Bailey's impoverished financial condition, and the company's own records indicate its awareness that Bailey's loss was covered. Yet, Farmers Union deliberately and repeatedly, over a period of 3 years, refused to honor the policy and help rebuild Bailey's home. Farmers Union knew full well that Bailey needed the proceeds available under the policy to rebuild her home. Instead of honoring the policy and helping Bailey cope with the loss of her home, Farmers Union used Bailey's desperate situation against her, attempting to coerce her into accepting a final cash settlement for far less than the amount to which she was entitled under the policy.

Given the evidence of the intensity and duration of the distress in Bailey's life since the collapse of her home, the finding of severe mental suffering is reasonably inferable from the record. Therefore, we will not set aside as clearly wrong the trial court's finding of damages in the amount of $150,000 for mental suffering.

## VI. CONCLUSION

Pursuant to Neb. Rev. Stat. § 44-359 (Reissue 1988), in addition to the amount of her recovery, we award Bailey the sum of $5,000 as an attorney fee for appellate proceedings.

AFFIRMED.