THE SOCIETY OF ST. VINCENT DE
PAUL IN THE ARCHDIOCESE
OF DETROIT, Plaintiff,

v.

MT. HAWLEY INSURANCE
COMPANY, Defendant.

No. 98–71598.

United States District Court,
E.D. Michigan,
Southern Division.

May 6, 1999.

James Klemanski, Troy, MI, for Plaintiffs.

Paul Hines, Southfield, MI, for Defendants.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

EDMUNDS, District Judge.

This insurance dispute arises out of an April 24, 1997 fire that destroyed Plaintiff's second hand store located at 28417 N. Telegraph Road in Flat Rock, Michigan. The building and its contents, along with other commercial properties, are insured by Defendant pursuant to Commercial Property Policy No. MCP119474 for the period October 1, 1996 through October 1, 1997. After the fire, Plaintiff submitted an insurance claim to Defendant. Defendant does not deny there is coverage for the loss. Rather, the dispute concerns the amount of the loss.

Plaintiff's complaint alleges that Defendant has failed to timely pay, as required under the insurance policy, the $614,000 "agreed value" for the Flat Rock building, the $25,000 "agreed value" for the building's contents, as well as amounts owed under the policy for debris removal and business interruption. Plaintiff's complaint asserts that Defendant's conduct constitutes: (1) a breach of the insurance contract; (2) a bad faith breach of an insurance contract; (3) a violation of Michigan's Uniform Trade Practices Act ("UTPA"), Mich. Comp. Laws § 500.2001 et. seq.; and (4) a violation of Michigan's Consumer Protection Act, Mich. Comp. Laws § 445.901, et. seq.

This matter comes before the Court on cross-motions for partial summary judgment. Plaintiff contends that it is entitled to summary judgment on its claims that: (1) the policy entitles it to the $614,000 "agreed value" of the building and the $25,000 "agreed value" of its contents; (2) the policy entitles it to a $755,112.54 "replacement cost" of the building as limited by the $614,000 "agreed value" coverage limit; (3) alternatively, it is entitled to a declaration that the "actual cash value" of the building is $581,654.71; (4) it is entitled to 12% penalty interest under Michigan's UTPA for the six month period between August 1997 (when the claim was filed) and February 1998 (when Defendant made partial payment of the claim); and (5) it is entitled to 12% prejudgment interest on all sums awarded. Defendant's cross-motion contends that Plaintiff is entitled under the policy to receive the "actual cash value" of the destroyed Flat Rock building at the time of the loss and makes a demand, pursuant to the terms of the policy, that the amount of the loss be determined by the appraisal process set forth in the policy. Defendant's motion further contends that Plaintiff does not have a viable tort claim for bad faith breach of an insurance contract; a viable claim for damages under Michigan's Uniform Trade Practices Act; or a viable claim under Michigan's Consumer Protection Act.

Plaintiff's motion is DENIED, and Defendant's motion is GRANTED. To the extent Plaintiff's breach of contract claim is premised on an "agreed value" argument, it is dismissed. The unambiguous terms of the parties' insurance policy provides that Plaintiff's loss is to be measured by the actual cash value of the destroyed building at the time of the loss. The policy further provides that either party may demand that disputes concerning the amount of the loss be resolved by the appraisal process described therein. Defendant has made such a demand here and thus the amount of the loss is to be determined by the appraisal process set forth in the insurance policy. To the extent Plaintiff

alleges a tort claim for bad faith breach of the insurance contract, it is dismissed. Michigan does not recognize any such claim. Plaintiff's claim against Defendant for an alleged violation of Michigan's Consumer Protection Act is likewise dismissed. Plaintiff is not a consumer who purchased Defendant's policy for personal, family or household purposes and thus is not entitled to the protection provided under that Act.

Plaintiff's claim for damages under Michigan's Uniform Trade Practices Act is dismissed. There is no private cause of action under the UTPA. Plaintiff's motion for partial summary judgment as to its right to 12% penalty interest under the UTPA for the six month time period from August 1997 (when it filed its claim) and February 1998 (when Defendant tendered payment for the building loss to Plaintiff) is DENIED AS MOOT. Defendant has offered to pay Plaintiff 12% interest for that six month period. Plaintiff's remaining claims for the 12% penalty interest under the UTPA for the period commencing after February 1998 are DISMISSED because Plaintiff's claim for a larger loss payment is reasonably in dispute and thus exempt from the UTPA's 12% penalty interest provision.

Finally, Plaintiff's motion for partial summary judgment as to prejudgment interest under Mich. Comp. Laws § 600.6013(5) is DENIED WITHOUT PREJUDICE as premature. Future events; i.e., settlement or an appraisal award in an amount equal to the amount Defendant has already tendered to Plaintiff, may affect Plaintiff's right to prejudgment interest under § 600.6013(5).

## I. Facts

### A. Claim for Fire Loss

Subsequent to the April 24, 1997 fire, Plaintiff filed a claim with Defendant. Defendant does not deny that the loss is covered under its policy; rather, it disputes only the amount of the loss. Plain-

tiff contends that, pursuant to the policy's "agreed value" provisions, the amount of loss for the subject building is $614,000. Plaintiff also contends that a figure close to this amount reflects the actual cash value of the burned building. Defendant, on the other hand, contends that the policy's "agreed value" optional coverage provision serves only to suspend the policy's coinsurance provisions and thus addresses how much of a loss will be paid by the Defendant and not how the loss itself will be valued. Rather, other provisions address how the dollar value of the loss is to be determined in the first instance; i.e., by determining the building's actual cash value. It is Defendant's position that the actual cash value of the building is $247,-147.58 (including debris removal and clean up), and Defendant tendered this amount to Plaintiff on February 4, 1998.[1] In its motion for partial summary judgment, Defendant demands, pursuant to Section E.2 of the parties' insurance policy, that an appraisal panel determine the actual cash value of the subject building.

### B. Relevant Policy Provisions

The policy at issue here is a "manuscript" policy. This means it was the product of negotiations between Plaintiff and Defendant. *See* Complt. ¶¶ 6–8. The following provisions are relevant to the parties' cross motions for partial summary judgment.

*Declarations Page:* Lists 25 covered items, each with a separate "amount of coverage" and coinsurance percentage of "0%." The "optional coverages" section states that it is "applicable only when entries are made in the schedule below." There are entries under the "Agreed Value" portion but not under the "Replacement Value" portion of this section. *See* Def.'s motion, Ex. B at 1.

*Supplemental Declarations Page:* Lists as Prem. No. 9, the building located at 28417 Telegraph, Flat Rock, Michigan, and lists $614,000; $25,000; and $185,000 as the "Amount of Coverage" for the building, personal property, and business income respectively. It also lists a 0% coinsurance percentage for each item. *Id.* at 3.

*Limits of Insurance:* This provision provides that "[t]he most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations." *Id.* at 8, § C.

*Appraisal Provision:* Provides that if the insurer and insured "disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding." *Id.* at 9, § E.2.

*Loss Payment:* Provides that "[i]n the event of loss or damage covered by this Coverage Form, at our option, we will either: (1) Pay the value of lost or damaged property; (2) Pay the cost of repairing or replacing the lost or damaged property, subject to b. below; (3) Take all or any part of the property at an agreed or appraised value; or (4) Repair, rebuild or replace the property with other property of like kind and quality, subject to b. below." *Id.* at 10, § 4.a.

This provision further provides that the insurer "will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and: (1) We have reached agreement with you on the amount of loss; or (2) An appraisal award has been made." *Id.* at 10, § 4.g.

---

1. Plaintiff filed its Complaint in Wayne County Circuit Court on February 26, 1998. Defendant removed the action here in April 1998.

*Valuation:* Provides that the insurer "will determine the value of the Covered Property in the event of loss or damage as follows:

a.   At actual cash value as of the time of loss or damage, except as provided in b., c., d., e. and f. below." *Id.* at 11, §§ 7 and 7.a.

*Coinsurance:* Included under Section F, "Additional Conditions" and provides that "[i]f a Coinsurance percentage is shown in the Declarations, the following condition applies.

a.   We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps: (1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage; (2) Divide the Limit of Insurance of the property by the figure determined in step (1); (3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in step (2); and (4) Subtract the deductible from the figure determined in step (3).

We will pay the amount determined in step (4) or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself." *Id.* at 12, § F.1.a. Examples of the coinsurance calculation in an underinsured and adequately insured situation are demonstrated in § F.1.a.

*Optional Coverages:* Include "Agreed Value", "Inflation Guard", and "Replacement Cost". This provision states that "[i]f shown in the Declarations, the following Optional coverages apply separately to each item." *Id.* at 14, § G.

*Agreed Value:* Included under "Optional Coverages", and provides that: "The Additional Condition, Coinsurance does not apply to Covered Property to which this Optional coverage applies." *Id.* at 14, § G.1.a. This provision further provides that the insurer "will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations." *Id.* Subsection G.1.b. provides that: "[i]f the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional condition, Coinsurance, is reinstated and this Optional Coverage expires."

## II.   Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.   Fed. R.Civ.P. 56(c).   The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III.   Analysis

### A.   Interpretation of the Policy's "Agreed Value" Provisions

Plaintiff asserts that, when there is a total loss of an insured property, the "agreed value" provisions of its policy require Defendant to consider the "agreed value" to be the amount of the loss and further require Defendant to pay the "agreed value" amount to Plaintiff as its insurance recovery for that loss.   Defendant, on the other hand, asserts that the "agreed value" optional coverage provisions must be read in light of the entire policy.   Doing this, Defendant contends,

clarifies that the "agreed value" provisions affect the amount of insurance the insured is entitled to recover for the loss; not the amount of the loss itself. Rather, Defendant urges, the terms of the policy unambiguously provide that the amount of the loss is to be measured by its actual cash value at the time of its loss. The amount of the Plaintiff's insurance recovery for that loss is then determined using the calculation set forth in the "Agreed Value" provision found in § G.1.a. The Court agrees with Defendant. This dispute requires the Court to construe the terms of the parties' insurance contract. Having done so, the Court concludes that the unambiguous terms of the policy provide that Plaintiff's loss is to be measured by the actual cash value of the destroyed building at the time of the loss.

### 1. General Rules of Contract Interpretation

■ The rules of construction for insurance contracts are the same as those for any other written contract. *Comerica Bank v. Lexington Ins. Co.,* 3 F.3d 939, 942 (6th Cir.1993). The function of the court is to determine and give effect to the parties' intent as discerned from the policy's language, looking at the policy as a whole. *Auto–Owners Ins. Co. v. Churchman,* 440 Mich. 560, 566, 489 N.W.2d 431, 434 (1992). Under Michigan law, the issue of whether a contract is ambiguous is a question of law for the court. *Steinmetz Elec. Contractors Ass'n v. Local Union No. 58,* 517 F.Supp. 428, 432 (E.D.Mich. 1981); *Mayer v. `Auto–Owners Ins. Co.,* 127 Mich.App. 23, 27, 338 N.W.2d 407, 409 (1983).

■ A contract which admits of but one interpretation is unambiguous. *Fragner v. Amer. Comm. Mut. Ins. Co.,* 199 Mich. App. 537, 540, 502 N.W.2d 350, 352 (1993). In contrast, a contract provision is ambiguous if it is capable of two or more constructions, both of which are reasonable. *Petovello v. Murray,* 139 Mich.App. 639, 642, 362 N.W.2d 857, 858 (1984). If unambiguous, the court must enforce the contract as written, according to its plain meaning,

*Clevenger v. Allstate Ins. Co.,* 443 Mich. 646, 654, 505 N.W.2d 553, 557 (1993), without looking to extrinsic evidence. *Upjohn Co. v. New Hampshire Ins. Co.,* 438 Mich. 197, 205 n. 6, 476 N.W.2d 392, 396 n. 6 (1991). It is improper for the court to ignore the plain meaning of the policy's language in favor of a technical or strained construction. *Arco Indus. Corp. v. Travelers Ins. Co.,* 730 F.Supp. 59, 66 (W.D.Mich. 1989). The court must consider the contract as a whole and give meaning to all its terms. *Auto–Owners v. Churchman,* 440 Mich. at 566, 489 N.W.2d 431.

■ If the contract is ambiguous, the court must determine the intent of the parties. To do so, the court may look to extrinsic evidence such as custom and usage. *Michigan Millers Mut. Ins. Co. v. Bronson Plating Co.,* 197 Mich.App. 482, 494–95, 496 N.W.2d 373, 379 (1992), *aff'd,* 445 Mich. 558, 519 N.W.2d 864 (1994). "Perhaps the most common of extrinsic aids to the construction of an insurance policy or other contract is usage and custom." *Allstate Ins. Co. v. Freeman,* 432 Mich. 656, 712–13, 443 N.W.2d 734, 760 (1989) (Boyle, J.).

■ In addition, certain rules of construction apply. Ambiguous terms in an insurance policy are construed in favor of the insured. *Arco Indus. Corp. v. Am. Motorists Ins. Co.,* 448 Mich. 395, 402–03, 531 N.W.2d 168, 172 (1995). Moreover, it is the insurer's responsibility to clearly express limits on coverage. *Auto Club Ins. Ass'n v. DeLaGarza,* 433 Mich. 208, 214, 444 N.W.2d 803, 806 (1989). Thus, insurance exclusion clauses are construed strictly and narrowly. *Auto–Owners v. Churchman,* 440 Mich. at 567, 489 N.W.2d at 435; *Farm Bureau Mut. Ins. Co. v. Stark,* 437 Mich. 175, 181, 468 N.W.2d 498, 501 (1991).

### 2. Construction of the Insurance Policy

Reading the "Coinsurance" and "Agreed Value" clauses together, as the Court

must, it becomes evident that they provide mutually exclusive formulas for determining the total amount an insured will be paid for a covered loss. The Coinsurance provision explains the formula the insurer uses to calculate the amount that will be paid on a claim.[2] The provision provides examples of how the coinsurance formula works, explains how underinsured and adequately insured losses result from application of the formula, and cautions that, as to uninsured amounts, the insured "will either have to rely on other insurance or absorb the loss yourself." Def.'s Motion, Ex. B at 12, § F.1.a. As one authority observed, "[c]o-insurance clauses are designed to prompt policyholders to purchase 'enough' property insurance by reducing their rights of recovery under the policy where they have underinsured." Jeffrey W. Stemple, *Law of Insurance Contract Disputes*, § 8.03 at 8–12 (2d ed. Aspen Law & Bus.1999). Coinsurance clauses thus place the risk of underinsuring on the insured; not the insurer. They provide a financial disincentive for the policyholder who might otherwise choose to underinsure and save on premium payments.

Coinsurance clauses present insureds with the difficult task of predicting whether they have adequate insurance for property that is to be valued at the time of the loss. As explained by another authority:

> Establishing the exact value required to comply with the coinsurance clause is difficult. The insured is always left with the lingering doubt that a coinsurance penalty will be applied at the time of the loss; to avoid this worry, a cautious insured may decide to carry more insurance than is necessary.

J. Trieschmann, et al., *Commercial Property Insurance and Risk Management*, Vol. II at 103 (4th ed.1994). The policy at issue here alleviates this problem by giving insureds the option to purchase "agreed value" coverage.

As indicated on the Declarations pages of Plaintiff's policy, the "Agreed Value" optional coverage is applicable to Plaintiff's claimed loss. The "Agreed Value" provision, § G.1, unambiguously suspends the operation of the Coinsurance provision, and in its place provides a different method or formula for calculating the maximum amount the insurer is obligated to pay for a covered loss. The insurer is obligated to pay:

> no more for loss of or damage to [covered] property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

Ex. A at 14, § G.1.a. Thus, when this coverage option is chosen and in effect, the maximum recovery calculation is as follows:

> [Limit of Insurance divided by Agreed Value in Declarations] × [Amount of Loss] = Insurance Payment for Claimed Loss

Examination of Plaintiff's policy reveals that the Limit of insurance and the Agreed Value of the properties listed in the Declarations both total $6,005,580. Therefore, Plaintiff is entitled to recover 100% of the loss (subject of course to policy limits and deductibles). The "Agreed Value" optional coverage provision, however, does not speak to how the claimed loss is to be valued.

■  The language in the "Agreed Value" optional coverage provision contradicts Plaintiff's assertion that, in the event of a total loss, the insured is to automatically receive the "Agreed Value" listed on the Declarations pages. The "Agreed Value" and "Coinsurance" provisions both place the risk of underinsuring on the insured. The advantage of the "Agreed Value" provision is the certainty it provides to the insured that it is adequately insuring its

---

**2.** The calculation involves two principal steps: (1) multiply [value of the property at the time of the loss] by [coinsurance percentage]; and (2) multiply [policy limit] by [the answer to step (1) above]. The amount paid is this figure or the limit of insurance, whichever is less.

property against future losses. Unlike an insured with a "Coinsurance" provision in its policy, the insured with "Agreed Value" coverage knows at the time it purchases the policy what percentage of a covered loss the insurer is required to pay. The "Agreed Value" optional coverage provision clarifies the maximum amount of insurance dollars that will be paid for a covered loss; it does not address how that covered loss is to be valued in the first instance. That information is provided elsewhere in the policy. The Court's interpretation is affirmed by the Trieschmann treatise, *Commercial Property Insurance and Risk Management*, Vol. II at 103, which observes that an "Agreed Value" optional coverage provision in a building and personal property insurance policy "values the property only for purposes of suspending the coinsurance provision, not for determining the amount of a covered loss."

The policy's "Valuation" provision unambiguously provides that the value of a covered property loss will be measured by its "actual cash value as of the time of loss or damage". *See* Ex. B at 11, §§ 7 and 7.a.[3] To construe the policy as Plaintiff urges, would require this Court ignore the terms of its "Valuation" and "Agreed Value" provisions. This is something Michigan law prohibits. The insurance contract must be considered as a whole, and all of its terms must be given meaning. *See Auto–Owners v. Churchman*, 440 Mich. at 566, 489 N.W.2d 431.

Examination of Endorsements No. 5 and 6 refute, rather than support, Plaintiff's position. Endorsement No. 5, which adds a building located in Highland Park to Location No. 25, lists a $470,000 figure for the building, increases the limit of liability, and further provides that "it is agreed that 80% Coinsurance and Actual Cash Value applies to Loc. # 25." *See* Ex. B at 43, Endorsement No. 5, dated December 27, 1996. Endorsement No. 6, dated February 14, 1997, provides that: (1) the new limit on the building at 15001 Woodward Avenue in Highland Park, Michigan is increased $3,530,000 to $4,000,000; (2) the policy limit of liability is amended to a new value of $12,669,759; and (3) "it is further agreed that 80% Coinsurance is amended to 0% coinsurance Agreed Amount" and "valuation remains unchanged at Actual Cash Value". *Id.* at 44. There is nothing in the language of these Endorsements that contradicts this Court's interpretation of the policy. Rather, they lend additional support for the Court's interpretation.

The policy at issue here does not provide that, in the event of a total loss, the insurer must pay the insured the "Agreed Value" of the destroyed property. This type of coverage is commonly known as "valued policy coverage" and is typically provided by statute. Plaintiff's reliance on decisions from states that have valued policy statutes is misplaced. Michigan does not have a valued policy statute, and Plaintiff has not persuaded this Court that the Michigan courts would ignore the plain, unambiguous language of Plaintiff's policy and construe it in the manner Plaintiff urges. To the extent Plaintiff's breach of contract claim is premised on the "agreed value" argument discussed above, it is DISMISSED. There is no support for Plaintiff's claim in the policy language or in Michigan's statutory or case law.

Similarly, there is no support in the policy for Plaintiff's claim that optional coverage for "Replacement Cost" applies to its policy. Examination of the policy's Declarations pages reveals that under "Optional Coverages", the policy provides that the optional coverage is applicable "only when entries are made in the schedule below." *See* Ex. B at 1. There are entries under "Agreed Value" but none under "Replacement Cost." *Id.* Accordingly, to the extent Plaintiff's breach of contract or other claims are premised on a claim that it is entitled to "Replacement Cost", they are DISMISSED.

---

**3.** It is not claimed that the exceptions contained in 7.b, c, d, e and f apply here.

### 3. Use of the Policy's Appraisal Process to Ascertain the Amount of the Loss

■ The unambiguous terms of the parties' insurance policy provides that Plaintiff's loss is to be measured by the actual cash value of the destroyed building at the time of the loss. This determination, however, does not resolve the parties' dispute. There remains a dispute concerning the proper method for ascertaining the actual cash value of the destroyed property. Pursuant to the unambiguous terms of the policy, Defendant has demanded that the parties' dispute concerning the amount of the loss be resolved by the appraisal process set forth in the policy. *See* Ex. B at 9, § E.2. Plaintiff has not persuaded the Court that Defendant's demand should not be honored. The policy does not state a time when a demand to invoke the appraisal process must first be raised. Moreover, Defendant's failure to immediately select its appraiser on the heels of making its demand does not justify this Court's nullification of the Appraisal terms of the policy. The Michigan Court of Appeals' decision in *Pollock v. Fire Ins. Exchange,* 167 Mich.App. 415, 423 N.W.2d 234 (1988) does not support a contrary result. In *Pollock,* the Court held that the insurer could not raise a coverage defense concerning the plaintiff's failure to perform under the terms of the contract when the insurer itself hindered such performance. *Id.* at 237. Plaintiff here is not claiming that Defendant's dilatory actions have hindered its performance under the contract. Accordingly, its reliance on *Pollock* is misplaced.

When read together, the "Appraisal", "Loss Payment", and "Valuation" provisions of the policy clarify that: (1) the value of the destroyed property will be determined by its actual cash value at the time of the loss, § E.7; (2) *if* the insurer and insured disagree on the value of the property or the amount of loss, either may make a written demand for an appraisal of the loss, § E.2; and (3) a covered loss will be paid within 30 days after the insurer has received the sworn proof of loss, *if* the insured has complied with all of the terms of the policy *and* the insured and insurer have either reached an agreement on the amount of loss or an appraisal award has been made, § E.4.g.

The Court next addresses Plaintiff's claims based on Defendant's alleged bad faith in its performance under the insurance contract, violation of the Michigan Consumer Protection Act, and violations of Michigan's Uniform Trade Practices Act.

### B. Plaintiff's Bad Faith Claims

Plaintiff alleges, in Paragraph 20 of its Complaint, that Defendant's failure "to pay Plaintiff under the terms of its policy of insurance is a breach of its obligation of good faith to Plaintiff and is a breach of the contract of insurance." Defendant requests that this Court dismiss Plaintiff's claims to the extent they assert a tort claim for bad faith breach of the insurance contract. To the extent Plaintiff alleges such claims, they are DISMISSED.

■ This Court has recently observed that "Michigan law does not recognize an independent tort based upon a bad faith breach of contract." *Aetna Casualty & Surety Co. v. Dow Chemical Co.,* 883 F.Supp. 1101, 1111 (E.D.Mich.1995) (citing *Kewin v. Massachusetts Mutual Life Ins. Co.,* 409 Mich. 401, 403, 295 N.W.2d 50, 56 (1980) and *Hearn v. Rickenbacker,* 428 Mich. 32, 400 N.W.2d 90 (1987)). Michigan law recognizes a tort claim only when a plaintiff's complaint alleges "the breach of duties existing independent of and apart from" the contract of insurance. *Hearn,* 428 Mich. at 40, 400 N.W.2d at 94. " '[I]f a relationship exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not.' " *Haas v. Montgomery Ward and Co.,* 812 F.2d 1015, 1016 (6th Cir.1987) (quoting *Hart v. Ludwig,* 347 Mich. 559, 567, 79 N.W.2d 895, 898 (1956)). Plaintiff's bad faith allegations cannot be separated from Defendant's contractual duties. Plaintiff has not alleged that a relationship exists between it and Defendant indepen-

dent of and apart from their contractual relationship. Accordingly, to the extent Plaintiff's Complaint alleges a tort claim for bad faith breach of the insurance contract, it is DISMISSED.

### C. Plaintiff's Consumer Protection Act Claims

█ Plaintiff's claim against Defendant for an alleged violation of Michigan's Consumer Protection Act (MCPA) is likewise DISMISSED. Plaintiff is not a consumer who purchased Defendant's policy for personal, family or household purposes and thus is not entitled to the protection provided under the Act. *See Robertson v. State Farm Fire & Casualty Co.,* 890 F.Supp. 671, 673, 678–81 (E.D.Mich.1995) (where the court held the plaintiff was not entitled to the protections of the MCPA when the insured had purchased the subject insurance policy primarily for business, rather than personal, family or household purposes).

### D. Plaintiff's Claims Under Michigan's Uniform Trade Practices Act

█ Plaintiff also seeks, pursuant to Michigan's Uniform Trade Practices Act ("UTPA"), to recover "[d]amages caused by the dilatory conduct of Defendant in making full or partial payments on Plaintiff's claim". *See* Def.'s motion, Ex. A, ¶¶ 15–17, and E. Defendant responds that there is no private cause of action under the UTPA, and thus Plaintiff is not entitled to collect damages for an alleged violation of the UTPA. This Court agrees. To the extent Plaintiff alleges a claim for damages premised on Defendant's violation of the UTPA, those claims are DISMISSED. There is no private cause of action for violation of the UTPA. *See National Union Fire Ins. Co. v. Arioli,* 941 F.Supp. 646, 655 (E.D.Mich.1996); *Isagholian v. Transamerica Ins. Corp.,* 208 Mich. App. 9, 527 N.W.2d 13, 17 (1994); *Young v. Michigan Mutual Ins. Co.,* 139 Mich.App. 600, 362 N.W.2d 844, 846–47 (1984). Proof that Defendant has violated the UTPA will entitle Plaintiff to a 12% interest penalty and no more. The Michigan legislature has enacted the UTPA for the purpose of imposing penalties on insurers "who procrastinate or are dilatory in paying meritorious claims in bad faith." *Burnside v. State Farm Fire & Cas. Co.,* 208 Mich. App. 422, 528 N.W.2d 749, 753 (1995).

█ Defendant acknowledges that this Act permits recovery of a 12% penalty interest, but emphasizes that the interest payment applies only if Plaintiff's claim is not reasonably in dispute. This Court agrees. As set forth in the statute, recovery of the 12% interest penalty is warranted only where an insurance claim is not reasonably in dispute. The statute provides that:

> A person must pay on a timely basis to its insured ... the benefits provided under the terms of its policy, or in the alternative, the person must pay to its insured ... 12% interest ... on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims ... is an unfair trade practice *unless the claim is reasonably in dispute.*

Mich. Comp. Laws Annot. § 500.2006(1) (emphasis added).

Plaintiff's reliance on dictum in *Yaldo v. North Pointe Ins. Co.,* 457 Mich. 341, 578 N.W.2d 274 (1998), is misplaced. As recently observed by the Michigan Court of Appeals, the *Yaldo* majority's interpretation of the penalty interest statute was "merely dictum", did not establish a rule of law with regard to interpretation of this statute, and is not binding on the courts. *See Arco Indus. Corp. v. American Motorists Ins. Co.,* 232 Mich.App. 146, 594 N.W.2d 61 (1998). The *Arco* Court further observed that, since 1983, the courts have consistently held that, "in cases involving claims of breach of an insurance contract, under M.C.L. § 500.2006; M.S.A. § 24.12006 an insurer may refuse to pay a claim and be relieved of paying interest on the claim only when the claim is reasonably in dispute." *Id.* (internal quotes and

citations omitted). The Court further noted that:

> The purpose of the penalty interest statute is to penalize insurers for dilatory practices in settling meritorious claims, not to compensate a plaintiff for delay in recovering benefits to which the plaintiff is ultimately determined to be entitled.

*Id.* This Court predicts that, if called upon to address the issue presented here, the Michigan Supreme Court would follow this recent *Arco* decision.

The Court now addresses whether Plaintiff is entitled to 12% penalty interest on its building loss claim.

Plaintiff's UTPA claim for 12% penalty interest as to Defendant's delayed payment on its destroyed building loss can be separated into two time periods. The first includes the six month time period from August 1997 through February 1998. Plaintiff claims that Defendant owes it 12% interest on the $247,147.58 it tendered Plaintiff in February 1998 because Defendant delayed this payment for six months after the August 1997 date Defendant acknowledged it owed the amount. The second time period begins after the February 1998 payment date and continues until such time as Defendant pays Plaintiff the total amount it claims it is owed.

As to the first time period, Defendant responds that it is prepared to tender to Plaintiff 12% interest on the $247,147.58 already paid to it; covering the time period commencing with the date Plaintiff's entitlement to the $247,147.58 was no longer reasonably in dispute and ending on February 4, 1998 when that amount was tendered to Plaintiff. In light of Defendant's offer to pay Plaintiff 12% interest on the $247,147.58 amount for this 6 month period, Plaintiff's motion for partial summary judgment concerning its right to such 12% interest is DENIED AS MOOT.

As to the second time period, Defendant continues to contest Plaintiff's right to 12% penalty interest under the UTPA for any insurance recovery over and above the tendered amount because Plaintiff's claim that it is entitled to a larger amount for the loss

of its building is reasonably in dispute and thus exempt from the 12% penalty interest as provided in the UTPA. This Court agrees with Defendant. Similar to the facts in *Arco,* there are legitimate issues being contested here. The amount Defendant owes Plaintiff for the loss of its building is reasonably in dispute. Accordingly, as to the building loss, Plaintiff is not entitled to 12% penalty interest under the UTPA for the post-February 1998 time period. Defendant's resort to the appraisal process to help resolve this dispute, as set forth under the terms of the policy, does not render the dispute "unreasonable" or otherwise entitle Plaintiff to the 12% penalty interest provided under the UTPA. *See O.J. Enterprises, Inc. v. Insurance Co. of North America,* 96 Mich.App. 271, 292 N.W.2d 207, 208–209 (1980) (where the court observed that "[i]t is inconceivable that the Michigan Legislature ... would have intended to penalize insurers for seeking settlement of a disputed claim through the appraisal process").

### E. Plaintiff's Claim for Prejudgment Interest

■ Finally, the Court addresses Plaintiff's argument that it is entitled as a matter of law to the 12% judgment interest provided under Mich. Comp. Laws § 600.6013(5) from the date of its Complaint to the date of payment. *See Yaldo v. North Pointe,* 457 Mich. 341, 578 N.W.2d 274 (1998). Defendant responds that Plaintiff is not entitled to prejudgment interest because it has demanded an appraisal and will timely pay, without judicial intervention, any appraisal award (less the amount already paid to Plaintiff for the building loss). *See O. J. Enterprises,* 292 N.W.2d at 209; *Krim v. Commercial Union Assurance Co.,* 94 Mich.App. 639, 288 N.W.2d 463, 464 (1980).

■ Plaintiff's motion as to prejudgment interest is DENIED but not for the reasons stated in Defendant's response. Plaintiff's request for an assessment of its right to prejudgment interest is

premature. Accordingly, the denial here is WITHOUT PREJUDICE. Future events may affect Plaintiff's right to pre-judgment interest under § 600.6013. First, the parties may settle prior to entry of a judgment on the merits. The Michigan courts have observed that "[w]hen a plaintiff accepts a settlement, the plaintiff waives the right to prejudgment interest on that amount of the total judgment." *See Freysinger v. Taylor Supply Co.*, 197 Mich.App. 349, 494 N.W.2d 870, 871 (1992). Second, the appraisal process may result in an award that equals the amount Defendant tendered to Plaintiff prior to the filing of this Complaint. Defendant tendered the $247,147.58 payment for the building loss prior to this suit being filed on February 26, 1998. As this Court recently observed, "the purpose of the prejudgment interest statute... is to compensate a party for the delay between the filing of its complaint and the entry of a judgment in its favor". *Prestige Casualty Co. v. Michigan Mut. Ins. Co.*, 969 F.Supp. 1029, 1033 (E.D.Mich.1997). The statute is not designed to compensate a party for delay prior to the time the complaint is filed. *Id.*

The Complaint in this action was filed on February 26, 1998, and Defendant invoked the appraisal procedure for resolution of the parties' dispute over the amount of Plaintiff's loss on March 22, 1999. If judgment enters after the appraisal process is completed and is an amount greater than the amount Defendant has already tendered, the Court will at that time evaluate whether Plaintiff is entitled to prejudgment interest under § 600.6013(5) from the time the Complaint was filed until the judgment is paid or whether prejudgment interest will be disallowed for the period of delay resulting from Defendant's resort to the appraisal procedure provided under the subject insurance policy. *See Dedes v. Asch*, 233 Mich.App. 329, 590 N.W.2d 605 (1998) (where the court held that prejudgment interest may be disallowed for periods of delay not the fault of the insurer or delays that do not erode the purposes underlying the prejudgment statute).

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for partial summary judgment is DENIED and Defendant's motion for partial summary judgment is GRANTED.