**ACME ROLL FORMING COMPANY,**
**Plaintiff–Appellant,**

v.

**HOME INSURANCE COMPANY,**
**Defendant–Appellee.**

No. 00–1795.

United States Court of Appeals,
Sixth Circuit.

March 20, 2002.

Before JONES and MOORE, Circuit Judges; HAYNES, District Judge.*

PER CURIAM.

Plaintiff–Appellant Acme Roll Forming Company ("Acme") appeals the district court's grant of summary judgment to Defendant–Appellee Home Insurance Company ("Home Insurance") and the court's denial of Acme's own motion for summary judgment. Acme manufactures tubular steel and Home Insurance insures Acme's manufacturing facilities. After some of Acme's equipment was damaged by a lightning strike, the parties settled on property damages, but could not agree on Acme's loss of income claim and the claim went to an appraisal panel. Acme received an appraisal award against Home Insurance for lost income, and sought statutory interest on the award. Home Insurance declined to pay any interest. Acme

brought suit under the Michigan Uniform Trade Practices Act ("UTPA"), and both parties moved for summary judgment. Because the district court erred in its analysis of the Michigan UTPA and genuine issues of material fact exist in this matter, we REVERSE the grant of summary judgment for Home Insurance, AFFIRM the denial of summary judgment to Acme, and REMAND this case for further proceedings.

## I. FACTS

Acme is a Michigan corporation that has manufactured roll-formed tubular steel since the 1930s. The manufacturing process is conducted on a tube mill and requires that large coils of steel are first uncoiled, then fed continuously through a series of forming stands, which form the steel into square- or rectangular-shaped tubing that is seam-welded by an high frequency induction welder and immediately cut to desired lengths. At some time prior to April 1991, Acme contracted with Home Insurance for a Manufacturer's Output Policy of Insurance, which covered Acme's business property, equipment, and machinery, as well as any loss of income directly resulting from an interruption in business operations caused damage to Acme's property.

On April 8, 1991, Acme's manufacturing facilities were struck by lightning. Acme asserts that the strike rendered one of its welders completely inoperable, temporarily eliminating fifty percent of Acme's manufacturing capability. Acme states that by late April some repairs were made with the assistance of the welder manufacturer, but that the welder could only operate on a sporadic basis without full control of the

---

* The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of    Tennessee, sitting by designation.

welder functions. Acme states that it promptly notified Home Insurance of the damages. Each party's version of the facts begins to differ at this point. According to Acme, Home Insurance only agreed to reimburse Acme for repair costs to resume partial operation but refused to authorize the purchase of a new power control unit suggested by the welder's manufacturer as a potential remedy for the welder problems. Home Insurance states only that a dispute arose between the parties concerning whether the damage to the welder was due to the lightning strike or to the age and deterioration of the antiquated welder.

Acme recounts that the same welder failed again in early January 1992. The company was again able to make the welder operational but without certain functions, such as controlling the amount of heat generated at the point of the weld. Acme claims that to meet customer demand and minimize loss of income, it continued manufacturing with the damaged welder, but this caused extensive and repetitive damage to other equipment on the mill. Acme states that it again notified Home Insurance of the losses caused by the damaged welder, and requested that Home Insurance authorize the purchase of a replacement welder from a limited number of compatible welders available in the world. Home Insurance did not authorize the replacement purchase, as it felt there were questions regarding whether the welder could be repaired or would require replacement, and instead required Acme to submit a Proof of Loss for all claims related to the lightning strike.

On April 15, 1992, Acme submitted its Proof of Loss, covering physical damage, loss of income to that point in time, and parts purchased to repair machinery. Home Insurance acknowledged receipt of the claim and informed Acme that it would investigate. Thereafter, Home Insurance hired electrical experts to investigate the claim. Acme asserts that since Home Insurance had not authorized the purchase of the compatible replacement welder, it had to operate its mill with the damaged welder, thus incurring additional expense and damages while the investigation proceeded. During the investigation, the parties engaged in discussions of Home Insurance's liability and benefits to which Acme might be entitled.

On May 16, 1994, the parties executed a Settlement Release for all property and other claims in the amount of $93,000. Acme's loss of income claim and additional expense claims were not included in the Settlement Release. The parties continued negotiations that were apparently quite acrimonious. On August 16, 1995, the parties entered into a Stipulation for Appraisal to have the remaining loss of income claim resolved by an appraisal panel. On March 18, 1999, the appraisal panel awarded Acme $685,383.00 for loss of income and $25,000 in interest. On April 14, 1999, Home Insurance paid Acme the appraisal award but not the interest. Soon thereafter, Acme demanded that Home Insurance pay the interest awarded by the panel, as well as statutory interest on the full amount of the appraisal award, in the sum of $596,721.72. Home Insurance refused to pay either the appraisal award interest or the statutory interest.[1]

On June 23, 1999, Acme brought the instant diversity suit against Home Insurance in the United States District Court for the Eastern District of Michigan. After discovery, the parties filed cross-mo-

---

1. Home Insurance moved the district court for summary judgment to set aside the panel's interest award but the district court denied the motion and entered judgment for Acme in that amount. Home Insurance did not appeal that interest judgment to this court.

tions for summary judgment. Acme moved the district court to order judgment for the statutory interest, claiming that it had submitted a "satisfactory" proof of loss to Home Insurance in April 1992 and that Home Insurance should have paid the benefits "on a timely basis" as required by the Michigan UTPA. Acme further claimed that because Home Insurance had not made such timely payment, under the UTPA, Acme was automatically entitled to interest on the appraisal award. In opposition, Home Insurance argued that no interest was due because the April 1992 Proof of Loss was unsatisfactory, the claim was "reasonably in dispute," and Home Insurance made a timely payment from receipt of the true "satisfactory" Proof of Loss, namely, the appraisal award.

On June 7, 2000, the district court granted summary judgment to Home Insurance, denying the same to Acme. The court found that (i) no genuine issue of material fact existed as to whether Acme was entitled to statutory interest because Acme's loss of income claim was "reasonably in dispute"; (ii) a "satisfactory" Proof of Loss on the loss of income claim was not received until the appraisal award was rendered; and (iii) as Home Insurance had paid the appraisal award within 30 days as required by statute, the payment was made on a timely basis. Acme timely appealed to this court.

## II. DISCUSSION

### A. Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). This court reviews *de novo* the grant of a motion for summary judg-

ment. *Brooks v. American Broadcasting Cos.*, 999 F.2d 167, 174 (6th Cir.1993). We review a denial of summary judgment only for abuse of discretion if the district court concluded that there exists a genuine issue of material fact, *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988) (quoting 6 MOORE'S FEDERAL PRACTICE ¶ 56.15[8] (2d ed.1985)) ("trial court may ... exercise a sound discretion in denying summary judgment where, although the movant may have technically shouldered his burden, the court is not reasonably certain that there is no triable issue of fact; where a portion of an action may be ripe for summary judgment but is intertwined with another claim(s) that must be tried; and in certain other situations."), but review *de novo* a denial based on purely legal grounds. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363 (6th Cir.1993), *cert. denied*, 510 U.S. 1177, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994). However, "a district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). In considering a motion for summary judgment, the court must view all the facts and draw all justifiable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party has the burden of showing the absence of a genuine dispute over facts which, under the substantive law governing the issue, might affect the outcome of the action. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some

significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987).

### B. Statutory Interest

■ Our inquiry is whether the district court erred in finding that no genuine issue of material fact existed regarding whether Acme should recover interest on the appraisal award under sections 500.2006(1) and (4) of the Michigan UTPA. Section 500.2006 states in pertinent part:

(1) A person must pay on a timely basis to its insured ... the benefits of its policy, or, in the alternative, the person must pay to its insured ... 12% interest, as provided in subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute.

(4) When benefits are not paid on a timely basis the benefits shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance. Where the claimant is a third party tort claimant, then the benefits shall bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of

12% per annum if the liability of the insurer for the claim is not reasonably in dispute.

Mich. Comp. Law §§ 500.2006(1), (4).

Acme argues that it provided a "satisfactory" Proof of Loss to Home Insurance on April 15, 1992 and that, under § 500.2006(1), Home Insurance should have paid the benefits of the policy on a timely basis. Acme further argues that since Home Insurance did not do so, under § 500.2006(4), it is automatically entitled to interest on the award. Home Insurance argued, and the district court agreed, that because the claim was "reasonably in dispute" under § 500.2006(1), there is no requirement that interest be paid. Home Insurance and the district court misread the statute.

#### 1. *Reasonably in dispute*

■ The doctrine announced in *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny dictates that in diversity cases, federal courts must apply the substantive law of the state's highest court. If the state's highest court has not spoken sufficiently to establish a clear rule of law, then it is the responsibility of the federal court to "ascertain from all available data what the state law is and apply it." *Bailey v. V & O Press Co.,* 770 F.2d 601, 604 (6th Cir.1985).[2]

---

**2.** In *Bailey,* this court discussed several sources of data that may help guide a federal court in its determinations of state law. The decisional law of the state's highest court and relevant dicta in related cases as determined by that court are accorded the greatest weight. The decisions of the state's appellate courts are also accorded weight, although a federal court may not be bound by lower court determinations if convinced by other data that the state's highest court

would determine differently from the appellate court. Additionally, attorney general opinions may be helpful even though nonbinding, and information from the state's non-judicial departments may be particularly relevant depending on the subject area. Other persuasive authority may also be instructive, including model laws, restatements of law, law review articles, treatises, and decisions from other jurisdictions. 770 F.2d at 604.

In *Yaldo v. North Pointe Insurance Co.*, 457 Mich. 341, 578 N.W.2d 274 (1998), the Michigan Supreme Court addressed section 500.2006(4) and noted that "where the action is based solely on contract, the insurance company can be penalized with twelve percent interest, even if the claim is reasonably in dispute." *Id.* at 277 n. 4. Moreover, the court said, "[w]ith respect to collection of twelve percent interest, reasonable dispute is applicable only when the claimant is a third-party tort claimant." *Id.* at 277.[3]

Home Insurance argues, however, that in *Arco Indus. Corp. v. Am. Motorists Ins. Co.*, 233 Mich.App. 143, 594 N.W.2d 74 (1998), *aff'd by an equally divided court*, 617 N.W.2d 330 (Mich.2000), the Michigan Court of Appeals subsequently found the *Yaldo* statutory interest interpretation of section 500.2006(4) to be dictum and not a binding rule of law. 594 N.W.2d at 75–76. Although the pronouncement may have been dicta to the *Yaldo* court's decision of the case before it, we nevertheless believe the Michigan Supreme Court's statutory interpretation is sound as to the "reasonably in dispute" language in § 500.2006(4).[4]

There has been some question regarding sections 500.2006(1) and (4) as to whether, and under what circumstances, the "reasonably in dispute" language applies. *See e.g., Kerwin v. Paul Revere Insurance Co.*, 6 Fed.Appx 233 (6th Cir.2001).[5] The statute states in the final sentence of subsection (1) that "[f]ailure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an *unfair trade practice* unless the claim is reasonably in dispute." (emphasis added). Unfair trade practices are different in purpose and import from the "unfair claims settlement practices" provisions in section 500.2006(4), with different remedies for violations. *See* ROBERT E. KEETON & ALAN I. WILDISS, INSURANCE LAW (Practitioner's Ed.) §§ 7.7(b) & (d), at 867–69, 873–74 (1988). Perpetrators of *unfair trade practices* are subject to administrative penalties by the state insurance commissioner, including investigation and fines, with possible suspension or revocation of their state insurance license for persistent violations. Mich. Comp. Laws §§ 500.2028—500.2038. In contrast, the remedies for *unfair claims settlement practices* are the

---

**3.** The court was referring to the confusion over the "reasonably in dispute" language due to the second sentence in § 500.2006(4). As is clear from the first clause in that sentence, this provision only applies to third party tort claimants, not contractually-insured claimants.

**4.** Moreover, we are not persuaded by Home Insurance's contention that because the Michigan Supreme Court did not provide a later opinion in the *Arco* case reinforcing the language in *Yaldo*, that the *Arco* decision essentially stands as the definitive interpretation of sections 500.2006(1) and (4). This view of Michigan Supreme Court procedure is incorrect. After hearing the arguments in *Arco*, the Michigan Supreme Court split 3–3 on the appeal. Pursuant to statute, the Michigan Supreme Court must affirm the judgment of the court below when the justices split equally. Mich. Comp. Laws § 600.230.

**5.** In *Kerwin*, this Court also addressed the issue of statutory interest under the Michigan UTPA, stating that, regardless of the *Yaldo* decision, the Michigan Supreme Court had not yet definitively spoken on the issue, and "if called upon to resolve the question, would approve of the trend among Michigan's lower courts prohibiting the assessment of statutory interest where a claim is reasonably in dispute." 2001 WL 223856 at *6. In that case, as in other decisions that have interpreted this statute, the focus was placed on the "reasonably in dispute" language of the final sentence of § 500.2006(1) without addressing § 500.2006(4). 2001 WL 223856 at *5–6; *see e.g., Society of St. Vincent De Paul v. Mt. Hawley Ins. Co.*, 49 F.Supp.2d 1011, 1021 (E.D.Mich.1999). It is in subsection (4) that the question of entitlement to interest for a contractual insured is resolved.

statutory interest provisions in subsection (4), with the "reasonably in dispute" language linked to the relationship between the insurer and the claimant.[6]

We believe the district court misinterpreted the relevant provisions of the Michigan UTPA. Based on the plain language of the statute, the "reasonably in dispute" language at the end of subsection (1) does not contradict the entitlement to interest under subsection (4). Thus, the remaining question is whether a genuine issue of material fact exists regarding Acme's entitlement to interest under the contractual insured provision of § 500.2006(4). A determination of this question hinges on whether and when Acme provided a "satisfactory" proof of loss to Home Insurance.

### 2. "Satisfactory" proof of loss

■ The standards and criteria used to determine whether a proof of loss is "satisfactory" is a long-standing issue in insurance law.

> If a policy stipulates that 'satisfactory proof' shall be furnished, the insurer cannot demand proof other than what is *reasonable and just,* and ordinarily such a provision will be considered complied with when there has been furnished such proof as establishes the fact of the loss and of the right of the claimant to recover. An insurer has 'satisfactory proof of loss,' where proof is sufficient to fully apprise the insurer of insured's claim.

13 COUCH ON INSURANCE § 189:59 (3d ed.1999) (emphasis added). "When faced with the language 'satisfactory proof,' ...

the immediate response ... is 'satisfactory to whom' (or 'proof,' in whose judgment?).... [T]he default reading should be an objective standard, satisfactory to a neutral arbiter, rather than satisfactory to one of the two interested parties." *Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 559 (6th Cir.1998) (en banc) (Boggs, J., dissenting). Moreover, " 'satisfactory' is traditionally limited by [the] objective standard, so that the insurance company is not permitted to reject proof that would be satisfactory to a reasonable person." *Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1089 (9th Cir.1999) (citations omitted). Although there is no discrete legal definition of when a proof of loss is "satisfactory" for the purposes of awarding interest, the Michigan courts have stated that "[t]he amount of loss must be liquidated, known, or easily ascertained at the moment liability is denied for interest to be properly awarded." *Whitney v. Allstate Ins. Co.,* 66 Mich.App. 74, 238 N.W.2d 410, 413 (1975).

Acme argues that its original April 15, 1992 Proof of Loss was a complete recitation of the damages up to that point and was therefore satisfactory. In its motion for summary judgment, Acme argues that the original proof of loss had to have been "satisfactory" because the appraisal panel eventually awarded it a sum greater than the original amount for loss of income, thus validating that there was a loss of income at the time of submission which had continued to increase through the time of the appraisal process; therefore, it is entitled to interest as a matter of law.

---

**6.** There are valid concerns that are met by removing the reasonableness standard from the contractual insured provision in the first sentence of section (4), including providing a greater deterrent to irresponsible rejection of claims; compensating claimants for delay in receipt and the cost of engaging insurer to obtain recovery; the net value of coverage will not be reduced by recalcitrant insurers; and, the costs of litigating meritorious claims are dispersed to all insured by insurer by premium charges, rather than borne by those insureds forced into contests. *See* KEETON & WILDISS, at § 7.7(c) and *Comment,* at 870–73.

Home Insurance asserts that Acme's comparison reasoning is flawed and that "[t]he determination of what is a 'satisfactory' proof of loss, . . . can never turn merely on whether some greater or lesser amount is eventually awarded through appraisal because the outcome of a future appraisal proceeding bears no relation whatsoever to whether one or each party to an insurance contract is satisfied with a proof of loss for purposes of resolving a dispute under the policy."

Home Insurance also asserts that Acme's initial submission was incomplete, and thus "unsatisfactory," because, nine months after submission, Acme still had "other expenses" to provide to the insurer. Acme responds, however, that while Home Insurance conducted its investigation, Acme's manufacturing difficulties continued, which caused the amount of lost income to increase each day. As such, Acme claims that by the time the insurer had completed its investigation, these additional losses were the "other expenses" reported nine months after the submission.

In its analysis, the district court applied a subjective standard to resolve whether the April 1992 Proof of Loss was satisfactory: the court compared Acme's original loss of income claim with Acme's loss of income submission to the appraisal panel, and found, in its view, such a wide discrepancy that the claims were clearly "reasonably in dispute." Thus, as there has been no objective determination on the "satisfactory" question, and the appraisal reports and testimony cited but the parties are neither helpful nor dispositive in resolving this question, a genuine issue of material fact remains on this point, the determination of which is clearly necessary to resolving Acme's entitlement to statutory interest. Therefore, summary judgment is inappropriate for either party.

### 3. Appraisal Process

■ Home Insurance argues, however, that no genuine issues of material fact remain because the parties themselves could not agree on whether the original Proof of Loss was "satisfactory" as to the loss of income claim, but did agree to have the appraisal panel make that determination. Therefore, the "satisfactory" proof of loss was the award determined by the appraisal process. As such, Home Insurance contends that the date it received the appraisal panel determination should be considered the date of receipt of the satisfactory proof of loss for statutory compliance purposes. Consequently, Home Insurance declares that because it paid the appraisal award amount within thirty days of receipt of that determination, it paid the claim "on a timely basis" and no interest is due. *See O.J. Enterprises v. Insurance Co. of North America*, 96 Mich.App. 271, 292 N.W.2d 207, 208 (1980) (when amount of loss is reasonably disputed by insurer and insured, and matter is submitted to court-appointed appraiser, no entitlement to statutory interest exists if insurer makes timely payment of appraisal award) and *Krim v. Commercial Union Assurance Co.*, 94 Mich.App. 639, 288 N.W.2d 463, 464 (1980) (when parties settle good faith dispute over amount of liability through negotiation or appraisal process, then interest is not available to insured if insurer pays claim within statutorily required time from ascertainment of loss).[7]

7. Acme argues that these cases are interpreting § 500.2832, a fire insurance policy statute that was repealed on December 31, 1991 so the cases do not apply to this matter because the proof of loss was not submitted until April 1992, or, in the alternative, that the applicable law is that which was in effect at the "date of judgment" and that the "date of judgment" is March 18, 1999, if one equates the appraisal award to a judgment, as the appraisal

Section 500.2006 is a consumer protection provision codifying the inherent imbalances of power in insurance claim settlements. Like the Michigan legislature, we are troubled that an insured should lose the time value of its capital during extended insurance investigations and settlement negotiations, including an appraisal process. The focus should be on the reasonableness of the insurer's practices, not whether the matter was "reasonably in dispute." As the district court correctly stated, an insurer must "reasonably" avail itself of the appraisal process, acting in good faith and with no dilatory practices. *See Arco,* 594 N.W.2d at 76; *Yaldo,* 578 N.W.2d at 277.

Both parties agree that the negotiations in this matter were highly acrimonious. Acme alleges that rather than assisting in making its facility wholly operational, Home Insurance "was content on stringing Acme along, hiring an expert to disprove the validity of the claim, and refusing to cooperate and timely respond to Acme's reasonable request to stop the bleeding by purchasing a replacement welder. As a result, the opportunity to purchase a compatible replacement welder was lost through Home's conduct, for which Acme was unable to restore full regulatory control over the welder on Mill 1 until December, 1995." (J.A. at 206). Beyond these allegations, the record does not address whether Home Insurance acted in good faith here or engaged in dilatory practices. Rather, these are open factual questions that are clearly material to the resolution of this matter and weigh against summary judgment.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of summary

judgment to Acme, REVERSE the court's grant of summary judgment to Home Insurance, and REMAND this case for further proceedings consistent with this opinion.

award was never officially converted into a judgment. Acme's argument is without merit, as the statute that replaced the old

§ 500.2832, that is, § 500.2833, also allowed for appraisal.